IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**RENEA M. HECT**,

    Plaintiff,

vs.　　　　　　　　　　　　　　　　　　　　No. CIV 99-76 LCS/KBM-ACE

**RAYTHEON COMPANY**,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came before the Court on Plaintiff's Motion for Summary Judgment on Affirmative Defense *(Doc. 39)*, filed July 27, 1999; Defendant's Motion for Partial Summary Judgment *(Doc. 42)*, filed July 27, 1999; and Defendant's Request for Oral Argument on Motions for Summary Judgment *(Doc. 60)*, filed October 6, 1999. The Court has reviewed the motions, the memoranda submitted by the parties, and the relevant law. For the reasons stated in the following opinion, the Court finds that Plaintiff's Motion is well taken in part and will be granted in part; Defendant's Motion is well taken in part and will be granted in part; and Defendant's Request for Oral Argument is not well taken and will be denied.

**I. Background**

The undisputed facts of this case paint a sorry picture of events that took place on the job, at the taxpayers' expense, by defense contractor employees who are responsible for maintaining our nation's sophisticated missile defense system. Plaintiff Renea Hect was employed by Defendant Raytheon Company as a missile assembler-repairer, or "missile mechanic," beginning in March, 1997. Plaintiff worked with a team of other Raytheon missile mechanics at White Sands

Missile Range, New Mexico ("WSMR"). She was the only female missile mechanic employed by Raytheon at WSMR during the time of her employment. Plaintiff alleges that her male co-workers engaged in various forms of lewd behavior, sexual "horseplay," unwanted sexual advances, and other forms of sexual harassment while they were employed by Raytheon to maintain missiles at WSMR. Defendant does not deny that the activity alleged by Plaintiff took place, but claims that Plaintiff also initiated, and willingly engaged in, sexual horseplay. Defendant also claims that its supervisory personnel did not know that the allegedly offensive activity was taking place until Plaintiff talked to her department manager on October 21, 1997.

After Plaintiff reported the harassment to her department manager, she was assigned to a new work area (fiber optics) by mutual agreement while an investigation of her allegations was conducted. Defendant Raytheon suspended several of Plaintiff's male coworkers without pay as a result of its investigation. Defendant Raytheon also reprimanded Plaintiff and suspended her for two days without pay, allegedly because its investigator determined that Plaintiff had violated company policies by instigating horseplay and participating in other forms of inappropriate behavior on the job. Plaintiff wrote a letter to Raytheon management appealing the reprimand and suspension. Plaintiff presents no evidence, in that letter or otherwise, that she ever objected to her transfer to the fiber optics work area.

On or about February 16, 1998, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff did not check the box for "retaliation" on the cover sheet to the charge of discrimination, but she clearly indicated on the face of that document that "Respondent's action in conducting an investigation into my complaint of sexual harassment resulted in my being placed on a two day suspension, without pay." *See* Ex. 3 to Pl.'s

2

Mem. in Support of Mot. for Summ. J. *(Doc. 40)*. Nowhere in her EEOC charge or her accompanying affidavit did Plaintiff raise any objections to her transfer to the fiber optics area. *See id.* at Exs. 3, 6. Plaintiff received a "right to sue" letter from the EEOC on October 21, 1998. *See* Ex. 1 to Pl.'s Complaint *(Doc.1)*.

Plaintiff continued to work in the fiber optics area for the remainder of 1997 and into 1998. Plaintiff received a 10% pay increase from Raytheon in January, 1998, but eventually resigned in 1998. According to Defendant, Plaintiff volunteered for a layoff to continue her education and to receive a monetary payment. Plaintiff alleges that she resigned because she felt unwelcome and unproductive in the fiber optics area, had little chance of advancement, and continued to be the brunt of workplace rumors.

**II. Analysis**

Both the Plaintiff and the Defendant have filed motions for summary judgment on the issue of whether Plaintiff exhausted her administrative remedies on her Title VII retaliation claim. Defendant also moves for summary judgment on the grounds that Plaintiff cannot present sufficient evidence that her two-day suspension constituted retaliation under Title VII. Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). I must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence" that would justify sending the case to a jury. *Williams v. Rice*, 983 F.2d 177, 179 (10th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986)).

A. Cross Motions for Summary Judgment on Exhaustion of Administrative Remedies

Ms. Hect must exhaust her administrative remedies before bringing suit under Title VII. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir. 1997). Because Plaintiff filed a timely EEOC complaint, she may include in this suit any allegations reasonably related to the allegations in her EEOC complaint. *See id.; see also Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 864 F.2d 680, 682 (10th Cir. 1988). The EEOC complaint is liberally construed when determining whether administrative remedies have been exhausted. *See Strub v. Public Serv. Co. of Colo.*, 863 F. Supp. 1352, 1355 (D. Colo. 1993).

As both parties recognize, Plaintiff's failure to "check the box" next to retaliation is not dispositive of whether Plaintiff properly brought a retaliation charge to the EEOC's attention. *See Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1260 (10th Cir. 1998). Instead, the Court looks to the substance of Plaintiff's charge, including the text of the charge and the supporting affidavit. *See id.* Hect's EEOC Charge of Discrimination and its supporting affidavit allege that she was discriminated against based on sex, that she was subjected to sexual harassment, and that she was suspended without pay for two days after she reported the harassment to management. *See* Exs. 3, 6 to Pl.'s Mem. in Support of Mot. for Summ. J. *(Doc. 40)*. Neither her EEOC complaint nor her EEOC affidavit make reference to her transfer to the fiber optics area. *See id.*

Plaintiff's EEOC complaint clearly puts Raytheon and the EEOC officers investigating her complaint on notice that she alleged that her two-day suspension was retaliatory. Therefore, she has exhausted her administrative remedies as to that claim. Plaintiff appears to be arguing that because she raised that one retaliatory act in her EEOC complaint, she has exhausted her administrative remedies as to *any* acts of retaliation that she may now bring. *See* Pl.'s Reply

*(Doc. 58)* at 5-6. No authority is presented for this novel assertion. As both parties quote in their memoranda, the purpose of the exhaustion requirement is to give "the agency the information it needs to investigate and resolve the dispute between the employee and the employer." *See id.* at 7 (quoting Def.'s Resp. at 4, quoting *Wade v. Secretary of Army*, 796 F.2d 1369, 1377 (11th Cir. 1986)). There is absolutely no evidence that Plaintiff's transfer to the fiber optics area, and her remaining in that area after Raytheon's investigation concluded, was ever brought to the EEOC's attention, or that Plaintiff even complained about it to any of her supervisors. If that dispute even existed, the EEOC could not have investigated it or attempted to resolve it. I conclude that alleged act of retaliation by keeping Plaintiff in the fiber optics area was not reasonably related to the allegations included in her EEOC complaint. Therefore, Ms. Hect has failed to exhaust her administrative remedies as to that charge.

On the other hand, I conclude that Plaintiff has exhausted her administrative remedies as to the demeanor of the Raytheon investigator. Plaintiff's charge alleges that the Raytheon investigative process was a sham, and her affidavit specifically mentions Ms. Miele's questioning of her. I conclude that the EEOC and Raytheon had sufficient information about this charge to investigate or resolve it.[1]

B. Defendant's Motion for Summary Judgment on Causal Connection Between Protected Activity and Two-day Suspension

Defendant moves for partial summary judgment on the issue of whether Defendant's two-

---

[1]Defendant's reply memorandum raises the issue that the demeanor of the investigator is not an adverse employment action under Title VII. *See* Def.'s Reply *(Doc. 59)* at 7. This argument may have merit, but it is a new argument that is not relevant to Defendant's motion for summary judgment based on failure to exhaust administrative remedies. Plaintiff did not have the opportunity to address this new issue. Therefore, this issue must remain unresolved until a proper motion is brought before the Court allowing Plaintiff the opportunity to respond.

5

day suspension is causally related to Plaintiff's protected activity of complaining of sexual harassment. Defendant claims that Plaintiff was suspended for two days as a result of an internal investigation that revealed that Plaintiff had violated Raytheon's work rules by instigating and participating in various forms of physical and sexual "horseplay" while on the job. Defendant notes that Plaintiff's two-day suspension was less severe than the discipline it imposed on the other male employees (suspensions ranging from one week to four weeks without pay, and removal of group leadership responsibilities for the group leader).

Title VII retaliation claims are analyzed by applying the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1381 (10th Cir. 1994). Plaintiff must first establish a *prima facie* case of discrimination. *See id.* If Plaintiff can establish a *prima facie* case, the burden shifts to the Defendant to come forward with a legitimate, nondiscriminatory reason for the action. *See id.* at 1379. Once Defendant has articulated a nondiscriminatory reason for the action, then the burden shifts back to the Plaintiff to show that the asserted reason is pretextual. *See id.*

To establish a *prima facie* case for retaliation in violation of Title VII of the Civil Rights Act, Ms. Hect must show that: (1) she engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding; (2) she suffered an adverse employment action contemporaneous with or subsequent to the protected action; and (3) there is a causal connection between her protected activity and the adverse employment action. *See Cole*, 43 F.3d at 1381. Defendant does not challenge Plaintiff's ability to meet the first and second elements of the *prima facie* case, but challenges her ability to meet the third element.

A plaintiff may establish an inference of retaliatory motive by showing that the adverse

actions closely followed the protected conduct. *See Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997).[2] However, the pattern of employer practices must be very close in time to the protected conduct to raise the inference without additional evidence. *See id.* Here, the conduct is not only close in time, but it directly follows from Raytheon's investigation into Plaintiff's accusations. I conclude that Plaintiff has met her burden of establishing a *prima facie* case of retaliation.

Once a *prima facie* case is established, the burden shifts to Raytheon to articulate a legitimate nondiscriminatory reason for its action. *See Cole*, 43 F.3d at 1379. Plaintiff must then establish that the reason offered by Defendant is mere pretext for discrimination. *See id.*

Raytheon claims that Ms. Hect was disciplined for violating Raytheon's workplace rule 6 (referring to horseplay) and rule 12 (referring to sexual harassment, indecent or immoral conduct).[3] Plaintiff voluntarily admitted to the Raytheon investigator who was looking into her allegations that she participated in some "horseplay," and claims that she did so because she "was hired into an environment in which horse play and rude and lewd behavior was an everyday occurrence, often with the area managers' participation and/or observation." *See* Ex. 5 to Pl.'s Mem. in Response *(Doc. 50)*. She denies some of the more serious allegations, such as whether

---

[2]*Conner* involved a claim of retaliation under the Fair Labor Standanrds Act ("FLSA"), 29 U.S.C. § 215(a)(3). FLSA retaliation claims are analyzed using the identical burden shifting approach of *McDonnell Douglas*, 411 U.S. 792, that is used in Title VII cases. *See Conner*, 121 F.3d at 1394. Therefore, I find the reasoning of *Conner* to be persuasive in this context.

[3]Contrary to the statement in Paragraph 6 of Janet Miele's Affidavit, *see* Defendant's Memorandum in Support of Defendant's Motion for Partial Summary Judgment *(Doc. 47)*, Defendant did not attach a copy of the Raytheon Company Rules and Regulations to its Memorandum. I can only infer the content of these rules from the parties' arguments and Plaintiff's November 11, 1997 memorandum to David Arnn. *See* Ex. 5 to Pl.'s Mem. in Response *(Doc. 50)*.

she "goosed"[4] a male employee. It is unclear whether some of the sexual statements that Plaintiff is alleged to have made even constituted sexual harassment or indecent or immoral conduct under Raytheon's policies. For example, her alleged comment to a co-worker about the caloric content of male semen, although vulgar, may not rise to the level of sexual harassment unless the co-worker informed Plaintiff that she found the comment offensive or Plaintiff regularly made such unsolicited comments. Plaintiff also presents her November 11, 1997 memorandum and her EEOC Affidavit. *See* Exs. 5, 6 to Pl.'s Mem. in Response *(Doc. 50)*. In those exhibits, she presents evidence that the investigation into her allegations essentially put her conduct at issue, even though no one had complained of her conduct.

Although Plaintiff has not presented much evidence to support her assertion that Raytheon's reasons for her two-day suspension were pretextual, I conclude that she has presented enough evidence to raise a factual issue. She has presented evidence that there were no complaints of her past conduct, that she participated in "horseplay" only because that was the nature of the environment in which she was hired, and that the interrogation by Janet Miele was unusually harsh and focused on Plaintiff's behavior rather than Plaintiff's allegations. I conclude that there is sufficient evidence from which a reasonably jury could conclude that Raytheon's investigation and two-day suspension of Plaintiff violated Title VII's anti-retaliation provisions. 42 U.S.C. § 2000e-3(a). *See Sias v. CIty Demo. Agency*, 588 F.2d 692 (9th Cir. 1978); *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998 (5th Cir. 1969). Because Plaintiff has presented evidence from which a jury could find pretext, Defendant's Motion for Partial Summary Judgment

---

[4]"**goose** *vt* **goosed; goosing** *(ca.* 1880) **1:** to poke between the buttocks with an upward thrust." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1995) (emphasis original).

shall be denied as to this issue.

The issues presented in the parties' motions for summary judgment involve well-established law and are not unduly complex. I find that oral argument is unnecessary to decide these motions. Therefore, I find that Defendant's Request for Oral Argument is not well taken and will be denied.

WHEREFORE, IT IS ORDERED that Defendant's Motion for Partial Summary Judgment *(Doc. 42)* is **granted in part**. Summary judgment is entered for Defendant as to Plaintiff's claims relating to her transfer to the fiber optics area. Summary judgment is denied as to Plaintiff's claims relating to her two-day suspension and the demeanor of the investigator.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment on Affirmative Defense *(Doc. 39)* is **granted in part**. IT IS ADJUDGED that Plaintiff has exhausted her administrative remedies as to her claims relating to her two-day suspension and the demeanor of the investigator.

IT IS FINALLY ORDERED that Defendant's Request for Oral Argument *(Doc. 60)* is **denied**.

**LESLIE C. SMITH**
**United States Magistrate Judge**

F:\Brian\99-76sj

9